## J. I. CASE THRESHING MACH. CO. v. CAMP COUNTY. (No. 2188.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 31, 1919. Rehearing Denied Feb. 12, 1920.)

1. COUNTIES ⬳165—WARRANT A "DEBT" RE-QUIRING PROVISION FOR LEVYING AND COLLECTING OF TAX FOR PAYMENT THEREOF.

A warrant drawn on the county treasurer in 1913 payable to the drawee in 1916, given for the purchase price of a traction engine, came within the definition of a debt under Const. art. 11, § 7, forbidding the incurring of debt unless provision is made at the time of executing the warrant for levying and collecting sufficient tax to pay the same.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

2. COUNTIES ⬳170(3) — PETITION INSUFFICIENT TO SHOW PROVISION MADE FOR COLLECTING TAXES FOR DEBT SUED FOR.

Petition in an action on a warrant given in 1913, and payable in 1916, as consideration for a traction engine, *held* not to sufficiently aver that at the time of creating the debt provision had been made for levying and collecting a sufficient tax to pay the same, although it was alleged that there were sufficient funds accumulated to satisfy the warrant.

3. EVIDENCE ⬳48—JUDICIALLY KNOWN THAT FUNDS RAISED FOR ROAD AND BRIDGE FUND MAY BE USED IN DEFRAYING CURRENT EXPENSES.

The court knows judicially that funds raised from taxes for the road and bridge fund of the county may be used in defraying current expenses for improving and maintaining the public highways unless appropriate orders have been made setting apart all or a portion of it for some other purpose.

4. COUNTIES ⬳165 — AFFIRMATIVE ACTION NECESSARY WITH REFERENCE TO PROVIDING TAXES TO PAY DEBT CREATED OR CONTEMPLATED.

To make provision for the levy and collection of taxes prior to or at the time of creating a debt as provided by Const. art. 11, § 7, when this has not been done by law, requires some affirmative action on the part of the county authorities with special reference to the particular debt being created or contemplated, it not being sufficient to provide for raising a fund which may or may not be used lawfully for its payment, a fund being necessary which cannot lawfully be diverted for any other purpose by a succeeding commissioners' court.

5. COUNTIES ⬳165—PROVISION FOR PAYMENT OF DEBTS MUST BE MADE PRIOR TO OR AT TIME OF CREATION.

Under Const. art. 11, § 7, providing that no debts shall ever be incurred by a county unless provision is made at the time of creating the same for levying and collecting a sufficient tax to pay it, it is not enough to provide funds for the payment of the debt after it has been created, as nothing the commissioners' court can do after creating the debt, without so providing, can validate it.

Appeal from District Court, Camp County; J. A. Ward, Judge.

Action by the J. I. Case Threshing Machine Company against Camp County. Judgment for defendant, and plaintiff appeals. Affirmed.

Bass & Engledow, of Pittsburg, and Spence, Haven & Smithdeal, of Dallas, for appellant.
M. M. Smith, of Pittsburg, for appellee.

HODGES, J. The appellant, J. I. Case Threshing Machine Company, instituted this suit against Camp county to recover upon two county warrants issued by the county, each for the sum of $900. The following is a copy of one of said warrants:

"No. 295.                                        $900.00.
"The Treasurer of the County of Camp, State of Texas:
"March 1st, 1916, Pay to the order of the J. I. Case Threshing Machine Company the sum of nine hundred dollars, with interest from this date at the rate of 6% per annum, out of the road and bridge fund of Camp county, Texas, being the amount allowed by the commissioners' court of said county at its August term, 1913, for one J. I. Case gas traction engine and two No. 1 Perfection road graders, this day purchased from the J. I. Case Threshing Machine Company.
"It is agreed and understood that the title to the above-described property is to remain in

the said J. I. Case Co. until all installments on same are paid.

"Minute Book 5, page 252.

"Witness our hands and the seal of this court in Pittsburg, Texas, this 13th day of August, 1913. [Signed] G. W. Keeling, County Judge, Camp Co., Texas. [Signed] Joe R. Hooton, County Clerk. [Seal.]"

The second warrant is identical in terms, except that it is payable March 1, 1917. In its original petition the appellant alleged in the usual form the execution and delivery of these warrants to it for a valuable consideration received by the county, and by appropriate averments the liability of the county by reason thereof, the maturity of the warrants, and the failure and refusal of the county to pay them. A general demurrer was interposed by the appellee to the petition, and sustained by the court. Thereupon the appellant filed a trial amendment, in which it alleged that prior to the purchase by the defendant of the road machinery for which the warrants sued upon were given Camp county had, through its proper authorities, levied a tax for road and bridge purposes of 15 cents upon each $100 of taxable property within its limits, and thereafter, but before the purchase of said machinery and for the purpose of supplementing the road and bridge fund of the county, an additional tax of 15 cents on the $100 of taxable property was legally voted by the taxpayers of Camp county at an election held for the purpose, and that the county's proper authorities were thereby not only authorized, but required, to annually levy such additional special tax; that Camp county issued road warrants, being county obligations, to obtain funds for the building and improving the county roads to the amount of $26,000, and for the purpose of paying the interest thereon and to create a sinking fund the county's proper authorities levied, for the years 1913 to 1921, inclusive, the regular 15 cents upon the $100 of taxable property authorized under the general laws of Texas, and specially set aside such tax to pay its said road warrants, and by proper orders provided that such further sum as might be necessary to pay said warrants was specially set aside also out of the special additional tax voted by the taxpayers. It was averred that thereby sufficient funds were provided, as required by law, to pay the interest on all such warrants and also upon like warrants which might lawfully be issued, including those herein sued upon, and to create a sinking fund to pay the principal thereof at maturity; that, if the special tax authorized and required by the vote of the taxpayers as aforesaid was not actually levied by the county authorities, the levy thereof was merely a ministerial act to be performed by them; that in law a fund was thus legally created and provided sufficient for the payment of the county's obligations herein sued upon, interest and principal, in accordance with their terms and legal effect. It was further alleged that out of the moneys thus raised by the taxpaying voters of Camp county for the purposes aforesaid a fund was created and was on hand at the respective maturity dates of the warrants sued upon sufficient for their payment. It was also alleged that the warrants were presented and registered by the county treasurer, and at their maturity presented for payment, and payment refused by the treasurer by direction of the county judge and the commissioners' court of Camp county. A general demurrer in the form of a special exception was sustained to this trial amendment, and upon the refusal of the appellant to again amend the suit was dismissed.

[1-5] The petition was attacked as defective because it failed to allege that the tax of 15 cents on the $100 valuation was for the payment of the interest or the principal of this specific debt. Section 7 of article 11 of the Constitution, among things, provides:

"But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent. as a sinking fund."

A debt has been defined as:

"An obligation which becomes a burden on the future revenues of the county, one which is not to be paid during the current year and out of the current revenues." McNeal v. City of Waco, 89 Tex. 83, 33 S. W. 322, and cases there cited; City of Terrell v. Dessaint, 71 Tex. 770, 9 S. W. 593.

While the warrants here involved were orders upon the treasurer to be paid out of a specific fund, the dates for their payment made them a charge upon the future revenues of the county. Hence they come within the definition of a debt which must be provided for as required by the Constitution. Rogers National Bank v. Marion County, 181 S. W. 884. The question then is: Does the petition allege a compliance with the constitutional requirements in making provision for levying and collecting the necessary taxes? When analyzed, the appellant's petition avers, in substance, the following facts: Camp county had a legal right to collect 15 cents on the $100 valuation of property under the general laws for building and improving its public roads. For the purpose of supplementing funds that might be raised from that source, the taxpayers, at an election held for that purpose, had authorized the levy and collection of an additional 15 cents on the $100 valuation of property. In order to obtain funds for building and improving its public roads, Camp county had issued road warrants to the amount of $26,000, and in

order to create an interest and sinking fund for the payment of those warrants Camp county had levied a tax of 15 cents on the $100 for the years 1913 to 1921, inclusive, and had set aside the funds arising from that tax for the purpose of paying those warrants. It is then alleged that thereby sufficient money was provided to create the interest and sinking fund required by law for all warrants theretofore issued, including those sued upon; that the fund thus provided for had been accumulated and was on hand at the respective dates on which appellant's warrants matured. It is thus shown that provision was made by the county for levying and collecting a tax sufficient to satisfy at their maturity the warrants that had been issued for the purpose of raising the $26,000 road fund. But the logical inference from the petition is that the warrants here sued on belonged to a different group of obligations and were issued for a different purpose and probably at a different time. It is not alleged that any special provisions were made for levying and collecting a tax for their payment. The averment that in providing for the payment of the $26,000 debt sufficient funds were accumulated to satisfy these warrants, and that sufficient money was on hand at their respective dates of maturity, does not meet the constitutional requirement. That statement means no more than saying that in making special provisions for the payment of another debt a surplus incidentally arose sufficient to meet this debt. That surplus might legitimately have been diverted to some other lawful use. We know judicially that the funds raised from such taxes form the road and bridge fund of the county and may be used in defraying the current expenses for improving and maintaining the public highways unless appropriate orders have been made setting apart all or a portion of it for some other purpose. To make provision for the levy and collection of the necessary taxes, when this has not been done by law, requires some affirmative action on the part of the county authorities with special reference to the particular debt being created or contemplated. It is not sufficient to provide for raising a fund which may or may not be lawfully used for its payment; but one must be provided for which cannot lawfully be diverted to any other purpose by a succeeding commissioners' court. This provision of the Constitution is intended to operate as a limitation upon the power of commissioners' courts to burden the counties with debts beyond the resources available for their payment, and must be applied by the courts with that end in view. The fact that it is averred that Camp county had the power to levy an additional tax of 15 cents on the $100 does not materially alter the situation. The inquiry is, not what the commissioners' court might have done in the exercise of its taxing power, but what did it do with reference to this particular debt? According to the averments of the appellant, it did nothing. It is true the petition states that ample funds were on hand for the payment of these warrants when they fell due; but that does not supply the vital omission. It is not enough to provide funds for the payment of the debt after it has been created; the Constitution requires this to be done at or before the time the debt is contracted. A compliance with that requirement is essential to enable the county authorities to contract a valid obligation to be paid out of the future revenues of the county. If the debt evidenced by the warrants sued on was, for the reasons stated, invalid at its inception, nothing the commissioners' court could thereafter do would validate it. The county is not bound to pay a debt which was illegally created. The following authorities support the conclusions reached: Rogers National Bank v. Marion County, 181 S. W. 884; Mitchell County v. Bank, 91 Tex. 370, 43 S. W. 880; Bassett v. City of El Paso, 88 Tex. 168, 30 S. W. 893; City of Terrell v. Dessaint, 71 Tex. 770, 9 S. W. 593; McNeal v. City of Waco, 89 Tex. 83, 33 S. W. 322.

The judgment is affirmed.