## O. T. BASSETT ET AL. V. CITY OF EL PASO.

### No. 270.

**1. City Bonds—Provision for Interest and Sinking Fund.**

Article 11, section 5, of the Constitution, prescribes, that "no debt shall ever be created by any city unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon, and create a sinking fund of at least 2 per cent thereon." Section 7, that "no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon, and provide at least 2 per cent as a sinking fund." The Act of the Legislature of April 29, 1893, enacted, that city councils or boards of aldermen, in authorizing the execution of bonds, "shall at the same time provide for the levy and collection of a tax annually of sufficient amount with which to pay the annual interest, and a sinking fund with which to pay such indebtedness at maturity." *Held*, that the language and purpose of these provisions are satisfied by an order providing for the annual collection by taxation of a "sufficient sum to pay the interest thereon and create a sinking fund," etc., though it does not fix the rate or per cent by which such sum is to be collected, but leaves the fixing of such rate for each successive year to the Commissioners Court or city council................... 175

**2. El Paso City Bonds.**

The ordinance of the city council of El Paso of August 11, 1893, in creating a fund to pay interest and to provide a sinking fund as required in its charter, stated in figures the amount, which more than satisfies the Constitution; that is, the amount named is in excess of that required. Such ordinance meets all the requirements of the Act of April 29, 1893............ 175

**3. Same.**

The city bonds, when issued, would be based upon and relate to the order providing for the interest and sinking fund, and the order would be part

of the contract between the city and the holder of the bond.   It would be the duty of the city council annually to levy a tax sufficient to collect the amount described, and this duty the bondholder could enforce.   But the validity of the bonds could not be affected by the subsequent failure or refusal to levy such tax, or by levy of an insufficient amount ............ 176

4. Same—Subsequent Levies of Taxes.
   The bonds being legal when issued, the subsequent levy of taxes so as to exceed the limit allowed the city, would not have the effect of invalidating the bonds, or impairing the right of the bondholders to have the collection made of the fund created for their benefit......................... 177

ERROR to Court of Civil Appeals for Fourth District, in an appeal from El Paso County.

Plaintiffs in error, taxpayers in city of El Paso, brought this suit to enjoin the issuance by the city of certain waterworks bonds.   The injunction was refused by District Court and the judgment was affirmed by Court of Civil Appeals.   The findings of fact by the trial judge, adopted by the Court of Civil Appeals, are as follows:

"1.   The taxable property of the city of El Paso for the fiscal year beginning March 1, 1893, is $5,359,190.

"2.   The taxes assessed for said fiscal year 1893, by the city of El Paso, were $99,145 (being $1.85 on the $100 of value).

"3.   On December 1, 1893, the city council of the city of El Paso levied taxes for the fiscal year 1893, beginning on the 1st day of March, 1893, for the purposes specified by section 93 of its charter, as follows, to wit:   Ad valorem, 80 cents; street maintenance, 20 cents; street improvement, 2 cents; sewer extension, 3 cents;  sewer bonds, sinking fund and interest, 4 cents; school bonds, 5 cents; artesian water bonds, 2 cents; funded indebtedness bonds, sinking fund and interest, 2 cents; waterworks bonds, 25 cents; school maintenance, 42 cents.

"4.   That at a regular meeting of the city council of the city of El Paso, on the 11th day of August, 1893, the city council of El Paso, by a vote of two-thirds of all the aldermen elected, passed an ordinance providing for the issuance of the coupon bonds of the city of El Paso, in the sum of $175,000, for the purpose of borrowing money to be used in the construction and completion, or the purchase and extension, of a system or plant of waterworks for said city and its inhabitants (a correct copy of said ordinance is attached to plaintiff's original petition,  marked 'Exhibit A'), which action of the city council was duly ratified by an election held September 12, 1893, and that the city council of the city of El Paso, at a meeting held on September 16, 1893, declared said election duly ratified at the election held on September 12, 1893.

"5.   One dollar and sixty cents on the $100 of value of the taxable property of the city of El Paso (for 1893), will raise $85,747.04.

"6.   Fifty cents on the $100 of value of the taxable property of the city of El Paso for 1893 ($5,359,190) is $26,795.95.

"7. The sum necessary to be raised to pay the annual interest and sinking fund on the $175,000 of bonds provided for by the ordinance of the 11th of August, 1893, is, for interest, $10,500; for sinking fund, $5833.34.

"8. The tax of 25 cents on the $100 of value levied by the city council of the city of El Paso, December 1, 1893, on the value of the taxable property of said city for said fiscal year 1893, will raise $13,-397.97.

"9. The bonded indebtedness of the city of El Paso existing previous to 1893 is correctly stated in 'Exhibit B,' attached to plaintiffs' original petition, being a statement officially made by the city treasurer.

"10. It is agreed by counsel for both parties, that the average annual deficit of cash collections arising from nonpayment of taxes to the city of El Paso is 11 per cent of the amount assessed.

"11. It is agreed, that up to the present time (May 1, 1894) only 60 per cent of the taxes levied for said fiscal year 1893, due the city of El Paso, have been paid; but that enforced collection by levy and sale can not be made until the first Monday in July, 1894.

"12. The petition to the city council, presented December 22, 1893, and signed by all the plaintiffs in this cause, except E. V. Berrien, Andrew Hornick, Mrs. Thomas Gugerty, Chas. H. Deere, and J. E. Ennis, for the remission of the tax of 25 cents for 1893, which petition is attached to the first supplemental answer of defendant, was refused.

"13. The bonds herein sought to be enjoined are dated the first day of October, 1893, and bear interest, payable semi-annually on the first days of April and October of each year thereafter; and at the time the first payment of interest became due, although duly signed and sealed, were not sold, but were in the hands of the Attorney-General of Texas for approval. That only one semi-annual installment of interest and one year's pro rata of sinking fund were necessary to be raised by the tax levy for the said fiscal year 1893, and that the levy of 25 cents on the $100 is sufficient for that purpose.

"There is no testimony as to any outstanding indebtedness for school maintenance, current expenses, and street improvement, further than the levy of taxes made December 1, 1893, and the provision of section 93 of the city charter."

The sections of the city ordinance providing for the issuance of the waterworks bonds, so far as necessary to understand the opinion, are shown by the extracts from sections 4 and 6, following:

By section 4 of said ordinance, it is provided: "That there shall be and is hereby created a special fund in the city treasury, to be known as the 'waterworks bonds sinking fund;' and for that purpose and to that end there shall hereafter be collected annually, upon all property in the said city subject to taxation, and paid into said fund in the city treasury, a sum of money equal to the one-thirtieth part of the whole principal of all of said bonds, viz., five thousand eight hundred and thirty-three dollars and thirty-four cents ($5833.34); and also a sum

of money equal to the interest accruing on said bonds, and each of them, annually, viz., ten thousand five hundred dollars, to pay the same as the same falls due semi-annually, and said moneys are hereby appropriated to that end."

And by the sixth section of said ordinance it is provided: "That there shall be and there is hereby levied annually, upon each dollar ad valorem valuation of the taxable property in the city of El Paso, real and personal, the sum of five (5) mills, or as much thereof as may be necessary, requisite, and sufficient to fully make, create, constitute, raise, and produce the said moneys required for the sinking fund and interest."

*J. M. Dean* and *F. B. Sexton,* for plaintiffs in error.—If the levy provided for in the fourth and sixth sections of the ordinance of 11th of August, 1893, was proper and legal, then the subsequent levy of the 1st day of December, 1893, added to that, which was 50 cents on the $100, made the entire levy exceed the limit of 2 per cent prescribed by the ninety-third section of the city charter of El Paso, and rendered the entire ordinance void. Acts 23rd Leg., p. 84, chap. 64, sec. 1; City of Fort Worth v. Davis, 57 Texas, 237; City of Terrell v. Dessaint, 71 Texas, 774, 775; Nolan County v. The State, 83 Texas, 183; Citizens Bank v. Terrell, 78 Texas, 454–456, 458–460; Buchanan v. Litchfield, 12 Otto (U. S.), 278–293; Dixon County v. Field, 111 U. S., 83, 87, 90, 95; Francis v. Howard County, 54 Fed. Rep., 487, 488; 1 Dill. Mun. Corp., 4 ed., secs. 89–91; Cool. on Taxation, 257; Cool. Const. Lim., 2 ed., secs. 195, 609; Burnham Mun. Bonds, secs. 39, 42, 62.

Briefly recapitulating our arguments under different assignments of error and propositions thereunder, we insist, that the appellants are entitled to a judgment declaring the bonds provided for by an ordinance of the city council of the city of El Paso of 11th of August, 1893, void, and to the injunctions for which they pray:

1. Because the levy of the tax of 50 cents on the $100 of the value of the taxable property of the city makes the total taxes of the city for 1893 exceed the limit of 2 per cent prescribed by section 93 of the charter of the city, and is necessarily void, as the council in levying it did an act it had no power to do, and which it was expressly prohibited from doing.

2. Because the levy of the tax of 25 cents on the $100 of value of the taxable property of the city for 1893, provided for in the ninth specification of the ordinance of December 1, 1893, is void, for the reason, that it will not raise the amount required to pay the annual interest and sinking fund of the bonds provided for by the ordinance of 11th of August, 1893, and therein does not conform to the positive provisions of the first section of the Act of the Legislature of Texas, approved 29th of April, 1893.

3. Because the ordinance of 11th of August, 1893, in several sections, but especially in its fourth and sixth sections, delegates or at-

tempts to delegate to certain city officers or employes the power to levy taxes, which power it could not so delegate. The city council alone has power to levy city taxes. This must be done annually, by ordinance of the city council.

4.   Because the levy of the tax of 25 cents on the $100 of the value of the city property, as made by the ninth specification of the ordinance of 1st of December, 1893, was never submitted to the qualified voters who were taxpayers of the city, as a part of the ordinance providing for the bonds in question.

5.   Because the city council in any or all of its attempts to levy a tax sufficient to pay the annual interest and sinking fund on the bonds in question, did not, as was its duty under the law, consider and provide for its existing and outstanding indebtedness. Had it done so, it could not have levied a sufficient tax for the purpose stated without exceeding the 2 per cent limit fixed by its charter. Hence its action in levying or attempting to levy the tax referred to was void.

6.   Because the levy of the tax of 25 cents on the $100 made December 1, 1893, was premature, and should not be collected, as no debt existed to which the money it would raise could be applied.

We respectfully submit to the court, that it is "the policy of our laws," as announced in Waxahachie v. Brown, 67 Texas, 531, and Gould v. Paris, 68 Texas, 512–519, "to restrict municipal corporations as to the creation of debts, and not merely as to the issue of bonds." In the case first referred to, the Supreme Court says: "It would seem, therefore, that no debt can be created when bonds could not issue, except such as could reasonably be met by current taxation within a reasonable period of time." These observations are made in a case in which it does not appear that there was any charter limit to taxation. How much more strongly do they apply in a case where the charter fixes a limit, and where its violation is manifest? The record in this case discloses that the policy of our laws, as announced by the Supreme Court, was disregarded by the city council of the city of El Paso.

It may be insisted, that the tax of 25 cents levied in the ninth specification of the ordinance of December 1, 1893, levies a sufficient amount to pay the first coupons, falling due in April, 1894, on the bonds provided for. We do not understand that the law authorizes a division of the amount necessary to pay annual interest and sinking fund of the bonds. On the contrary, it prohibits such a division, by providing in express terms in the charter of the city that taxes shall be levied annually, and by ordinance. The Act of April 29, 1893, expressly provides, in its first section, that at the time the bonds are provided for, a sufficient tax shall then be levied to pay their annual interest and a sinking fund with which to pay the bonds at maturity.

*Wm. H. Burges, Jr., Peyton F. Edwards,* and *Davis, Beall & Kemp,* for defendant in error.—Appellees submit the following summary of the vital points in this case:

It is admitted:   1.   That the city of El Paso is a city of more than 10,000 inhabitants, operating under a special charter.

2.   That it has power to issue bonds to the extent of 6 per cent of its taxable values.   Charter, sec. 88, Special Laws 1889, p. 49.

3.   That its taxable values on August 11, 1893, amounted to $5,359,-190.

4.   That it had power to levy taxes to the amount of two dollars on the hundred.   El Paso charter, sec. 93, Special Laws 1893, p. 43.

It is not denied:   1.   That the bonds are for a purpose for which the city of El Paso may issue bonds.   El Paso charter, sec. 88, Special Laws 1889, p. 49.

2.   That these bonds were ordered issued at a regular meeting of the city council, by the requisite vote.

3.   That this action was ratified at an election regularly held, after due notice, for the purpose of determining whether or not such action should be ratified and said bonds issued..

4.   That the bonds are correct in form, bear legal rate of interest, and are payable within the time provided by law.

The record shows:   1.   That at the time the ordinance was passed, provision was made for the collection annually of a tax sufficient to pay the interest and to create a sinking fund which will redeem the bonds at maturity.

2.   That the bonded and only indebtedness of the city of El Paso, on August 11, 1893, amounted to only $95,000.

3.   That the tax levied for the purpose of paying the interest and creating the sinking fund did not exceed the maximum limit to which the city of El Paso could impose taxes.

In other words, the findings of fact herein before set forth are a sufficient reply to appellant's several propositions.

These facts being established, the validity of the bonds is unquestionable, and we respectfully submit that the judgment of the District Court of El Paso County should be affirmed.

DENMAN, ASSOCIATE JUSTICE.—Plaintiffs in error, property holders and taxpayers in the city of El Paso, brought this suit to restrain said city and its officers from issuing its bonds to the amount of $175,-000, for the purpose of securing a system of waterworks.

On the 11th day of August, 1893, the city council passed an ordinance providing, among other things not necessary to mention, (1) for the issuance of said bonds, to bear date October 1, 1893, with interest from date at the rate of 6 per cent, payable on the first days of April and October of each year, and to mature thirty years from date; (2) "that there is hereby created a special fund in the city treasury, to be known as the waterworks bonds sinking fund, and for that purpose, and to that end, there shall be collected annually and paid into said fund one-thirtieth of the principal of all said bonds, $5833.34, and also the interest accruing annually on said bonds, $10,500, to pay same, and

said moneys are appropriated to that end;" (3) "that there shall be and is hereby levied annually, upon each dollar ad valorem valuation of the taxable property in said city of El Paso, real and personal, the sum of 5 mills, or so much thereof as may be necessary, requisite, and sufficient to fully make, create, constitute, raise, and produce the said moneys required for the sinking fund and interest;" (4) "should the same be insufficient, then the proper assessing and collecting officers of said city shall, and it is hereby made their duty, annually, in due time, form, and manner, and at the same time other city taxes are assessed and levied, to compute, ascertain, estimate, and declare the sum of money required to be levied, taxed, collected, and raised upon, of, and from said taxable property, to fully and completely raise and constitute said sinking fund and interest, and when so ascertained, it shall be their duty to assess, levy, and collect same;" and (5) the duty is imposed upon the council and other officers of seeing that the provisions above are, from time to time, carried out.

It is contended, that this ordinance is void and insufficient to support the bonds under the Constitution, the general laws, and the charter of the city, for the reason, that it does not levy a tax, but delegates to the assessing and collecting officers the legislative power to make such levy from year to year.

The first question presented is, was it necessary, under the law, for the council to actually *levy a tax* running through the period of thirty years until the maturity of the bonds, at the time of providing for their issuance? By tax, as here used, we mean a *fixed rate* or *per cent* of the assessed values, to be collected annually, without reference to the amount that would be realized each year, as values might advance or decline during the long life of the bonds. In order to determine the question, we must construe the provisions of the Constitution, the general law of 1893, and the charter relating thereto.

The Constitution provides, in article 11, section 5, that "no debt shall ever be created by any *city* unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least 2 per cent thereon;" and in article 11, section 7, that "no debt for any purpose shall ever be incurred in any manner by any city or county, unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least 2 per cent as a sinking fund."

The General Act of the Legislature, approved April 29, 1893, provides, that Commissioners Courts, city councils, or boards of aldermen, as the case may be, in authorizing the execution of bonds, "shall at the same time provide for the levy and collection of a tax annually of sufficient amount with which to pay the annual interest, and a sinking fund with which to pay such bonded indebtedness at maturity."

The charter contains no provision with reference to a tax levy or amount of sinking fund, but simply provides, that "when any bonds

are issued by the city, a fund shall be created to pay the interest and create a sinking fund to redeem the bonds.''

Neither of these constitutional or statutory provisions requires, in express terms, the *levy* of a fixed rate or tax to be collected each year during the life of the bonds, without reference to the different sums that would be annually raised thereby, but they all require that *provision* be made for the annual collection, by *taxation*, of (1) the interest, and (2) a certain sum as sinking fund. They all use different language, but have a common purpose.

By requiring the annual collection by taxation of a ''sum sufficient'' to pay interest and provide the sinking fund, the gradual payment of the debt was secured, the taxpayers were given an annual warning of the amount of debt being imposed upon them by their officers, and the power of such officers, in contracting such debts, was limited by the restrictions placed by law upon the powers of taxation for such purpose.

The language and purpose of these provisions seem to be satisfied by an order providing for the annual collection by taxation of a ''sufficient sum to pay the interest thereon and create a sinking fund,'' etc., though it does not fix the rate or per cent of taxation for each year by which such sum is to be collected, but leaves the fixing of such rate for each successive year to the Commissioners Court or city council.

To so construe these provisions as to require, at the time the debt is created, the levy of a fixed tax to be collected through a long series of years, without reference to the unequal ''sums'' that would in all probability be realized therefrom, instead of the collection annually of a certain ''sufficient sum'' to pay the annual interest and create the sinking fund required by law, would be doing violence to the language used, and authorize, in cases where values rapidly increase, the extortion from the taxpayers of large amounts of money in excess of the amount necessary to satisfy the interest and principal of the bonds, and this in turn would invite municipal corruption and extravagance. If it had been intended to require the *actual levy* of a *tax* at the time the debt was created, different and apt language for that purpose would have been used.

Applying these principles to the ordinance of August 11, 1893, above, it can not be held void as not being in compliance with the Constitution, law, and charter above cited. It creates a ''fund'' to pay interest and provide a ''sinking fund'' as required by the charter, and the amount of the fund stated in figures more than satisfies the Constitution, and fully meets the requirements of the Act of April 29, 1893. It then provides, that such sum shall be annually collected by taxation. It is perhaps difficult to give any plausible reason why this is not a full compliance with the law, for if an actual levy were required, the rate of taxation is a mere matter of calculation after the sum to be raised and the assessed values for a given year are known.

The order, however, proceeds further, and levies a tax of 5 mills, or so much thereof as may be necessary, to raise the given 'amount, and also provides, that if 5 mills be not sufficient, then a greater rate could be levied in order to realize the amount fixed to be annually raised for interest and sinking fund. This is, in effect, a restatement of the previous declaration that the $5833.34 sinking fund, and the $10,500 interest, should be collected annually by a tax of sufficient amount, when applied to the assessment of the particular year, to raise such sums, for it is clear that the order did not contemplate or "provide" for the raising of any other or greater sums, and did anticipate the necessity of levying a less or greater tax than five mills for that purpose.

Since we are of the opinion that it was not necessary for the council to make an actual levy of a specific tax at the time the bonds were ordered issued, and that they complied with the law by making "provision" for the collection of the interest and sinking fund, it becomes unnecessary for us to determine whether the order, by fixing the amount to be raised annually by taxation, whereby the ascertainment of the rate when the annual assessments were made became a mere matter of calculation, did not virtually amount to the levy of a tax varying each year with the assessment, and whether such order was a delegation of the power of taxation to the assessor and collector. The bonds, when issued, would be based upon and relate back to this order providing for the interest and sinking fund, and the order would be part of the contract between the city and the holder of the bonds. It would be the duty of the city council annually to levy a tax sufficient to collect the same, which duty the bondholder could enforce, but the validity of the bonds could not be affected by the failure or refusal to levy such tax, or by the levy of an insufficient tax during any year.

Plaintiffs in error contend, that the tax levied by the council in December, 1893, of 25 cents on the $100 was insufficient of itself to raise the sinking fund and interest, and therefore the bonds are void. From what we have said above, this tax, if it be conceded to be insufficient, would not affect the validity of the bonds, for the order of August 11, 1893, provided for the collection of the funds required by law, and the bonds, when sold, would relate back to and rest upon such unrescinded order as if they had been sold immediately, and the holder could compel the levy of a sufficient tax.

It is further contended by plaintiffs in error, that if the order of August 11, 1893, referred to above, be considered a levy of a tax of 5 mills on the dollar, or 50 cents on the $100, then the tax of 25 cents above must be added, making 75 cents on the $100, which they claim would be in excess of the city's power of taxation for such purpose.

As stated above, we have not deemed it necessary to determine whether the order of August 11, 1893, actually levied a tax, as we are of the opinion that it fully complied with the law by *making provision* for the collection of the interest and sinking fund by taxation; but if it be conceded to be sufficient as a *levy* of 50 cents on the $100, until

reduced or increased by the council, still we are of opinion that the special levy of December, 1893, was merely an attempt to carry out the provisions of the order of August 11, 1893, and the two can not be added together.

Plaintiffs in error further contend, that since the order of August 11, 1893, levied a tax of 50 cents on the $100, and since the council, on December 1, 1893, levied various taxes, amounting in the aggregate to $1.85 on the $100, which two taxes aggregate $2.35; or, deducting the 25 cents levy aforesaid, still leaves an aggregate of $2.10 on the $100, which is in excess of the city's power of taxation for all purposes, it being limited to 2 per cent—therefore the order of August 11, 1893, is for that reason void.

This contention can not be maintained, for if the order of August 11, 1893, be held sufficient as a levy of a tax of 50 cents, it could not be invalidated by the fact that the council subsequently levied other taxes which exceeded the limit of taxation. This proposition is not affected by the fact that the subsequent levy was made before the bonds were sold, for the order of August 11, 1893, as long as it stood unrescinded, was an appropriation of so much of the city's taxing power as might be necessary to satisfy its demands, and the bonds when sold related back to such order as above stated.

After a careful examination of the record, we are of the opinion that there is no error in the judgments of the trial court and Court of Civil Appeals in refusing an injunction, and they are affirmed.

*Affirmed.*

Delivered April 15, 1895.